This is a student expulsion case.
Appellants, Christopher Adams and his father, Charles Adams, appeal this case to our court for a second time. This court, in appellants' previous appeal of this case, reversed the trial court for its failure to permit appellants a hearing on their motion for new trial and remanded the case to the trial court for a hearing on appellant's motion. See, Adams v. City ofDothan Board of Education, 475 So.2d 580 (Ala.Civ.App. 1985). On remand the trial court heard appellants' motion and denied their motion for new trial. Appellants now seek review of the trial court's order and a decision on the merits of the case.
The facts of this case are as follows.
Christopher was a ninth grade student at Dothan High School. On October 18, 1984 Christopher admitted to Richard Grisby, administrative assistant at Dothan High School, that he had brought alcohol onto the school campus. Possession of alcohol on campus is contrary to the rules and regulations of Dothan High School governing student behavior. J.H. Woodham, principal of Dothan High School, then recommended to the Dothan City School Board (Board) that Christopher be expelled. After a hearing on the matter, the Board voted to expel Christopher for the remainder of the school year. The Board, however, granted Christopher the right to apply *Page 759 
for reinstatement after the year expired. Christopher was readmitted to Dothan High School for the 1985-86 school year. Appellants urge on appeal that Christopher's expulsion from school was unlawful and invalid on several statutory and constitutional grounds, and that, therefore, any reference to his expulsion should be removed from his school record.
Appellants first assert that the school board's action in expelling Christopher from school violated the Alabama compulsory education law. §§ 16-28-1 to -23, Code 1975. Appellants cite various provisions contained in Chapter 28, Title 16 to support their assertion. Briefly, appellants' argument is that school boards, when suspending or expelling a student, must explain their action to the juvenile court and that only the juvenile court should be permitted to decide whether a child can be removed from school. See, §§ 16-28-13, -14, Code 1975.
We cannot agree with appellants' contention. It is well established that school boards and officials have comprehensive authority within constitutional bounds to maintain good order and discipline in school. Boykins v. Fairfield Board ofEducation, 492 F.2d 697 (5th Cir. 1974), cert. denied,420 U.S. 962, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975); Lee v. Macon CountyBoard of Education, 490 F.2d 458 (5th Cir. 1974); Griffin v.Tatum, 300 F. Supp. 60 (M.D.Ala. 1969), aff'd in part, rev'd inpart, 425 F.2d 201 (5th Cir. 1970). The authority of school boards in Alabama to prescribe rules and regulations with respect to discipline in the schools is set forth in section16-1-14, Code 1975, which provides as follows:
 "Any city, county or other local public school board may prescribe rules and regulations with respect to behavior and discipline of pupils enrolled in the schools under its jurisdiction and may in its discretion require the grouping of pupils based upon considerations of discipline and may remove, isolate, separate or group pupils who create disciplinary problems in any classroom or other school activity and whose presence in the class may be detrimental to the best interest and welfare of the pupils of such class as a whole."
Even if, as appellants suggest, the above section fails to expressly provide school boards with the authority to suspend or expel students, case law has recognized the inherent authority of school boards to suspend or expel students when necessary to maintain order and discipline in the schools.Boykins v. Fairfield Board of Education, supra; Lee v. MaconCounty Board of Education, supra; Davis v. Ann Arbor PublicSchools, 313 F. Supp. 1217 (S.D.Mich. 1970). Where the school board's general authority to suspend or expel a student for misbehavior has been found within constitutional limits, such authority has not been questioned. No court has ever held that a school board may not exercise its authority to discipline students because of compulsory education laws. Those jurisdictions which have addressed this argument have rejected it. For example, in Betts v. Board of Education, 466 F.2d 629
(7th Cir. 1972), the Seventh Circuit Court stated:
 "[I]t is difficult to conceive that the compulsory school attendance laws foreclosed plaintiff's transfer as a disciplinary measure. Rather these laws are directed to parents or guardians and do not purport to guarantee students impunity from discipline removing them from their school regardless of the misconduct they engage in."
The Mississippi Supreme Court stated in response to a similar argument:
 "The compulsory education provision of the school code, and the other provisions above set out, should be construed together. So construed, they do not mean that a child is entitled to attend a public school regardless of his conduct, but, on the contrary, that it is subject to such reasonable rules for the government of the school as the trustees thereof may see fit to adopt."
McLeod v. State, 154 Miss. 468, 122 So. 737 (1929). *Page 760 
We agree with language quoted above. A student is entitled and indeed required to attend school under our compulsory education law. However, this does not mean that a student may escape the consequences of his misconduct at school. Our schools are permitted to reasonably exercise their authority for the government of conduct of students. In doing so, they do not violate our compulsory education law.
Appellants' remaining arguments deal with alleged violations of Christopher's constitutional rights.
Appellants first argue on this matter that the school board's expulsion of Christopher denied him substantive due process as provided under the fifth and fourteenth amendments. Specifically, appellants contend that the Board's enforcement and application of the Code of Student Conduct (Code) is arbitrary and unreasonable, and that Christopher's punishment was excessive. Appellants also contend that the Code provisions are ambiguous and unfair.
We conclude that the Code provisions are not so ambiguous as to deprive Christopher of his due process rights. The Dothan City Board of Education adopted a code of student conduct, setting out school rules and regulations concerning student conduct. Each student was given a copy of the code and returned a signed acknowledgment which stated that they had received and read the Code. The Code classified unauthorized possession of alcoholic beverages on school premises as a terminal offense. The Code clearly stated that the potential punishment for a terminal offense was expulsion. Although the Code does not provide any procedure for readmission into school, Woodham stated that it was school policy to permit an expelled student to apply for readmission after the school year. In fact, the Board permitted Christopher, in its order, to apply for admission in the 1985-86 school year.
Under the Code, the principal is required to suspend a student who commits a terminal offense and to recommend to the Board that the student be expelled pending final determination by the Board. In the case before us, Woodham recommended that Christopher be expelled and the Board, after a hearing, voted to expel Christopher. Appellants contend that the Board failed to exercise its independent judgment when it expelled Christopher and thereby denied him due process. Appellants citeLee v. Macon County Board of Education, supra, to support their contention. In Lee v. Macon County Board of Education, supra, the superintendent stated that it was the Board's policy to grant the school principal's recommendation of expulsion. The Fifth Circuit Court responded that such:
 "Formalistic acceptance or ratification of the principal's request or recommendation as to the scope of punishment, without independent Board consideration of what, under all the circumstances, the penalty should be, is less than full due process. Appropriate punishment is for the Board to determine, in the exercise of its independent judgment." (footnote omitted)
The court then remanded the case to the Board with directions that it reconsider the question of the appropriate penalty.
The facts in the case before us are distinguishable from those in Lee v. Macon County Board of Education, supra. Here, Superintendent Woodham testified that there had been instances where the Board altered the punishment recommended by the principal and did not agree with the recommendation of expulsion. There was nothing in the record to indicate that the Board merely ratified the principal's recommendation without an independent consideration of the merits. Thus, we do not find that Christopher was denied due process, as found in Lee v.Macon County Board of Education, supra.
Appellants contend also that the Board's expulsion of Christopher was excessive and unfair punishment. Several courts have addressed the question of the severity of disciplinary sanctions imposed on students in public schools. These courts have recognized that students do have substantive and procedural rights at school. *Page 761 See, e.g., Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992,43 L.Ed.2d 214 (1975). However, these courts also recognize that school disciplinary matters are best resolved by the local community school boards and officials, and that courts should supersede only when the school board's and official's actions are clearly unconstitutional. Petrey v. Flaugher, 505 F. Supp. 1087
(E.D.Ky. 1981). As stated in Lee v. Macon County Board ofEducation, supra, "judges [should not] review and revise school board disciplinary actions at will. Application is limited to the rare case where there is shocking disparity between offense and penalty."
In the case before us, the school officials testified that the use of alcohol and drugs had become a very serious problem in the Dothan City School system. Woodham testified that school officials felt that making students aware of the possibility of expulsion for possession of alcohol and drugs on school campus would have a significant deterrent effect on the students. Christopher brought alcohol onto the campus and permitted a fellow student to drink some. The Board's subsequent expulsion of Christopher was a response to what it perceived to be a major crisis of drug and alcohol abuse in the schools. Although Christopher's punishment may have been severe, we cannot say that, under the above circumstances, it was so severe as to be arbitrary and unjust. Nor do we find that it was grossly unfair for the school officials to refer Christopher to law enforcement officers. Such action was provided for in the Code. The school officials explained that this procedure was necessary because possession of alcohol by a minor was a violation of the law.
Appellants secondly contend that Christopher was entitled to warnings against self-incrimination and other Miranda warnings before he was questioned by school officials about his conduct. Appellants urge that Christopher's confession was unfairly obtained.
The record reveals that Christopher was questioned by Grigsby, administrative assistant at Dothan High School. Christopher admitted to Grigsby, and later to Woodham, the school principal, that he had brought alcohol onto school grounds. All this information was brought to the attention of the Board, and Christopher once again confessed at the Board hearing. Both Grigsby and Woodham testified at the hearing about Christopher's confession. At no time did Christopher or his attorney object to any testimony or evidence concerning Christopher's confession. Appellants never raised before the Board or trial court the issue that Christopher's privilege against self-incrimination was violated in any respect. This issue could not be raised for the first time on appeal to this court. Thorne v. Birmingham Community Development,409 So.2d 862 (Ala.Civ.App. 1982); Blackmon v. Zeigler, 390 So.2d 628
(Ala.Civ.App.), cert. denied, 390 So.2d 635 (Ala. 1980). Seealso, Averyt v. Doyle, 456 So.2d 1096 (Ala.Civ.App. 1984). Moreover, appellants failed to object when Christopher admitted at the Board hearing that he had brought alcohol onto campus. Therefore, we need not consider this issue.
However, even if this issue were properly before this court, appellants have failed to cite any authority to support an extension of the Miranda holding to the particular facts of this case. In fact, the authority is to the contrary. InBoynton v. Casey, 543 F. Supp. 995 (D.Maine 1982), the district court held that Miranda warnings are not required to be given to a student subjected to interrogations conducted by school officials in furtherance of their disciplinary duties. In Bettsv. Board of Education, supra, the Seventh Circuit Court rejected an argument similar to that of appellants, noting that, "Miranda warnings are not a requisite of due process but a condition to the admissibility in a criminal prosecution of statements obtained from a defendant questioned while in custody." Nor does it appear, as appellants suggest, that Christopher was unfairly induced into confessing by Grigsby's adjurations for Christopher to speak the truth. Edwardson v.State, 255 Ala. 246, 51 So.2d 233 *Page 762 
(1951); Hinshaw v. State, 398 So.2d 762 (Ala.Cr.App. 1981).
We will treat appellants' final two contentions of error together, as both concern statements made by the court in its order. First, appellants contend that the trial court erred in concluding in its order that the Board's expulsion of Christopher was not punishment. We fail to see how this contention could have any effect on the outcome of the case, and appellants have failed to cite any authority that would support a reversal on this ground. Furthermore, it appears that the trial court recognized that the Board's action in expelling Christopher might contain some elements of punishment, thus not ignoring the possibility that the Board's motive, in part, was to punish Christopher.
Appellants contend, also, that the trial court denied Christopher equal protection of the law by applying different standards to different classes of people on the basis of wealth. Appellants cite the following language in the court's order to support their contention.
 "It has not been shown that the Plaintiff has been prevented from finding other educational resources available to him. It has been shown that the County Board of Education has a policy of not allowing students who have been expelled from enrolling prior to their being eligible to return to the original system, but this would not prevent a child from attending a private school and maintaining a continued quality education. This might not be the case with an indigent family or with a child who has special needs, but neither seems to be the case here."
Appellants contend that the above language shows that the court would have decided Christopher's expulsion differently had Christopher been indigent. However, the court's decision also seems to be based on the fact that Christopher was expelled for only a short period of time, as well as the possibility that he may have had other educational resources available to him. Furthermore, there is nothing in the record to show purposeful or intentional discrimination by the court.Delia v. Court of Common Pleas, 418 F.2d 205 (6th Cir. 1969). None of the cases cited by appellants support their contention that the trial court denied Christopher equal protection of the law. We, therefore, find no error in the trial court's order.
We conclude that the school board properly expelled Christopher from school. The trial court's order upholding the school board's action is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.