EDWARD N. SCRUGGS, Retired Circuit Judge.
This is a student expulsion case.
After fully complying with procedural due process requirements, the City of Do-than Board of Education (board) expelled Carroll, an eighteen-year-old student, for being intoxicated at a school-sponsored function. He was a senior in a Dothan high school. Carroll petitioned the circuit court to set aside his expulsion, to order his readmission, and to expunge his expulsion from the school records. After an ore ten-us trial, the circuit court denied Carroll’s petition and affirmed the board’s action in expelling him. Carroll timely appealed and raises two issues through his capable counsel.
I
Carroll had a juvenile friend, who also attended the same school-sponsored function, a dance, while in a very intoxicated state and who was also arrested and later expelled from school. Carroll sought a summary judgment in this case on the ground that the juvenile court reinstated his juvenile friend in school with a finding that the board, its agents, or employees had violated the juvenile friend’s right to equal protection of the laws through its unequal enforcement of the board’s Code of Student Conduct. That motion for a summary judgment was overruled by the circuit court, and such action of the circuit court constitutes an issue which is raised by Carroll in his appeal.
Among the four elements of res judicata are the requirements that the parties in both suits must have been substantially identical and that the same cause of action must have been present in both suits. On the other hand, collateral estoppel operates where the subsequent suit between the same parties is not on the same cause of action. Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1199 (Ala.1978). Carroll and his juvenile friend obviously are not the same persons, nor are *248 they substantially identical persons, nor were they in privity. Therefore, the circuit court properly overruled Carroll’s motion for a summary judgment.
II
Carroll also contends that his expulsion from the public school amounted to an unequal, invidious, and discriminatory enforcement of school regulations which deprived him of his property rights and of the equal protection and due process of law guarantees of the Constitution of the United States.
In its final judgment, which upheld Carroll’s expulsion from school, the learned trial court made the following findings and ruling upon that issue:
“The Court finds that a dance, sponsored by the Journalism Club at North-view High and approved by the school’s principal, was held on the evening of April 4 of this year at the Doug Tew Community Center in Dothan. Two Northview teachers were assigned as chaperones, and, additionally, two off-duty policemen were hired to keep order. The Plaintiff and a friend, who is a juvenile, went to the dance after having consumed a large amount of rum. By Plaintiff’s own testimony, he and his friend were very intoxicated by the time they arrived at the dance. Plaintiff was seen by one of the chaperones and a policeman, staggering through the lobby outside the dance floor [and] vomiting on the wall and floor. Plaintiff’s juvenile friend also became nauseated and vomited. Both students were arrested by the policemen for public intoxication, Plaintiff being taken to the city police station and the juvenile to the diversion center. After a hearing before the Defendant Board of Education, where Plaintiff was present with his attorney and given an opportunity to present evidence, the Defendant Board of Education voted to expel Plaintiff from the school system for the remainder of the school year. That expulsion prompted Plaintiff’s petition to this Court.
“The Defendant Board of Education has adopted a Code of Student Conduct which classifies conduct violations into three separate categories. Class III violations are considered to be the most severe, and, when the evidence presented to the Board establishes that a student has committed a Class III violation, the only disciplinary action prescribed by the Code is expulsion. The possession, use, transfer or sale of drugs, drug paraphernalia, or alcoholic beverages on school property or at any school-sponsored function is stated to be a Class III offense. The Code of Student Conduct has been published by the Board, and each student is furnished a copy at the beginning of each school year. Each student and his parent or guardian are required to return to the student's school a statement affirming that they have received a copy of the Code and are familiar with its provisions. Plaintiff and his parents knew that he could be expelled if he went to school or to a school-sponsored function while intoxicated.
“Plaintiff seeks to have this Court set aside his expulsion by-contending that there has been selective enforcement by Defendant on Class III violations of its Code of Student Conduct and by contending that this type discipline is too severe for the violation committed. In support of this position, he produced evidence that the off-duty policemen, in addition to Plaintiff and his juvenile friend, saw two other males on the evening of April 4 who had been drinking. Neither of these individuals had gotten into the dance, but were both stopped by the police in the parking lot and sent away before they could get inside. Both had the odor of alcohol on their breath, but neither was intoxicated to the extent of Plaintiff and his friend. The evidence doesn’t reveal whether or not these people were students in the city school system. Perhaps, as Plaintiff apparently contends, the police should have arrested these two individuals and reported them to school officials rather than sending them away. On the other hand, law enforcement officers are quite often called upon to use *249 their discretion as to whether or not citizens have consumed alcohol to the extent of violating the law. Both policemen in this case have served for many years in the Dothan Police Department. They apparently felt that what they did was the appropriate action to be taken under the circumstances, and this Court certainly can’t say that they were wrong. This Court doesn’t feel that Plaintiff can justify his actions and avoid discipline simply because these policemen did two other people favors by barring them from the dance and thus possible punishment themselves. This evidence certainly does not rise to the level of proving that the Defendant Board of Education has engaged in any intentional, systematic, selective enforcement of Class III violations under the Code.
“Plaintiff next produced evidence, in an effort to show selective enforcement, that seven different elementary, middle, and high school students had been charged during the current school year with Class III violations where the discipline ultimately imposed was less than expulsion. To rebut this contention, the Defendant quite satisfactorily proved that, when each of these incidents was investigated, the evidence showed (1) that some lesser violation than that charged had actually been committed, (2) that there were no witnesses to the commission of the offense charged, or (3) that there were other mitigating circumstances which caused discipline less than expulsion to be exacted. This is no evidence of selective enforcement, but rather examples of school authorities attempting to record complaints of student misbehavior, to thoroughly investigate those complaints, and then to discipline the offending students appropriately. Certainly, the Plaintiff can’t seriously contend that every student who is charged with a Class III violation should be expelled despite the fact that an investigation later may reveal that a lesser violation has been committed or that the charge was only a rumor.”
The equal protection of the laws constitutional provision requires that all persons who are similarly situated should be treated alike. City of Birmingham v. Stacy Williams Co., 356 So.2d 608 (Ala.1978). The uneven application of a valid rule or statute is a violation of that constitutional safeguard. Sheriff of Houston County, Alabama v. Albertson’s, Inc., 402 So.2d 912 (Ala.1981).
Here, we find no such prohibited uneven treatment by the board, its officers, or its employees in expelling, or failing to expel, students pursuant to the Code of Student Conduct. It was explained in detail at the trial as to why certain Class III charges resulted in less punishment than expulsion, the primary reason being that there was insufficient evidence to sustain the particular Class III charge as it was originally made, but that the facts adequately supported a lesser charge. The superintendent of education, an assistant superintendent, and the chairman of the board each testified in substance that only the board can expel a student and that the board has treated all students uniformly who have been brought before it on Class III charges. For example, a relative of the chairman of the board was expelled from school for an alcohol-related charge in an earlier case. Adams v. City of Dothan Board of Education, 485 So.2d 757 (Ala. Civ.App.1986).
When a trial court hears ore tenus testimony, its findings are presumed to be correct and will not be disturbed on appeal unless the trial court was palpably wrong. Cupps v. Upton, 489 So.2d 544 (Ala.1986). Here, the evidence fully supports the findings of the trial court. The final judgment was not palpably wrong.
We agree with the trial court that the board did not violate Carroll’s constitutional rights by expelling him from school. The trial court’s final judgment, which upheld the school board’s action, is affirmed.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of *250 Alabama of 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.